# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 10, 2006

## RICKY BUTLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 11825    Jim T. Hamilton, Judge**

_____

**No. M2004-01543-CCA-R3-PC - Filed July 31, 2006**

_____

The appellant, Ricky Butler, filed a petition to rehear in accordance with Rule 39 of the Tennessee Rules of Appellate Procedure on June 29, 2006, following the release of the opinion of this Court on June 27, 2006.  The opinion of this Court dismissed the petitioner's appeal because the appellant's notice of appeal was filed outside the thirty day time limit.

The grant or denial of a petition to rehear remains solely in the discretion of this Court.  However, Rule 39 of the Tennessee Rules of Appellate Procedure provides guidance as to the "character of reasons that will be considered" by the Court in making its determination.  Such circumstances include the following: (1) the court's opinion incorrectly states the material facts established by the evidence and set forth in the record; (2) the court's opinion is in conflict with a statute, prior decision, or other principle of law; (3) the court's opinion overlooks or misapprehends a material fact or proposition of law; and (4) the court's opinion relies upon matters of fact or law upon which the parties have not been heard and that are open to reasonable dispute.  See Tenn. R. App. P. 39(a); see also Advisory Comm'n Comments, Tenn. R. App. P. 39.  A petition to rehear is intended to call attention of the Court to matters overlooked, not things which counsel supposes were improperly decided after full consideration.  Clover Bottom Hosp. & Sch. v. Townsend, 513 S.W.2d 505, 508 (Tenn. 1974).  Further, a petition for rehearing which merely reargues the appellant's original position will not be granted.  New Jersey Zinc Co. v. Cole, 532 S.W.2d 246, 253 (Tenn. 1975); State v. Thomas Dillon, No. 03C01-9304-CR-00124, 1994 WL 615748 (Tenn. Crim. App., at Knoxville, Nov. 7, 1994); see also Tenn. R. App. P. 39.

The appellant argues that this Court's dismissal of his appeal was incorrect because this Court granted a Motion to Accept Late Filed Notice of Appeal on July 15, 2005.  We have reviewed our opinion and the record.  Apparently missing from the Court's file in this case when it was originally given to the panel was indeed an order from this Court granting the appellant's request to file a late notice of appeal.  Therefore, we will grant the appellant's petition to rehear and will address the appellant's issues on the merits.

**Tenn. R. App. P. 3 Appeal as of Right; Petition to Rehear Granted; Judgment of the Trial Court Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Dwight E. Scott, Nashville, Tennessee for the appellant, Ricky Butler.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Mike Bottoms, District Attorney General; and Larry Nickell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION ON PETITION TO REHEAR

The petitioner was indicted for rape of a child and aggravated sexual battery. He entered into a guilty plea for two counts of aggravated sexual battery. As part of the plea agreement, the petitioner was to serve two concurrent eight-year sentences which would also be served concurrently to a previous four-year sentence. The petitioner filed a petition for post-conviction relief arguing that his plea was unknowing and involuntary and that he was afforded the ineffective assistance of counsel. The post-conviction court held a hearing and denied the petition. The petitioner appeals this decision. We affirm the decision of the post-conviction court.

## FACTUAL BACKGROUND

The petitioner's written statement given to the police upon his arrest stated the events as follows:

> On Sunday around 12:00 in the afternoon I was around to [sic] little girls around 11 and 13. We was watching a movie when I felt like doing it. I then ask [sic] one of them to come and rub me after I saw see [sic] was interested after she talked to her sister and she wanted to. I let both of them touch me, Then I tried to insert into them when I couldn't, I pumped their Backside. I put my penis in the crack of their but [sic]. I rub their vagina and but [sic] cheeks. We heard somebody comin[g] so thats [sic] why we stop.

The petitioner was charged with rape of a child and aggravated sexual battery. He agreed with the District Attorney's office in Maury County to enter an Alford plea[1] to two counts of aggravated sexual battery. As part of his plea agreement, the petitioner would serve eight years at 100 percent for each count to run concurrently and also run concurrently to a sentence he was serving for another offense. The petitioner's plea was entered on December 17, 2001.

The petitioner filed a petition for post-conviction relief on September 18, 2002, arguing that his plea was not entered voluntarily and that he was afforded the ineffective assistance of counsel. The post-conviction court held a hearing on May 8, 2003, and entered an order the next day, May 9, 2003, denying the petition. The petitioner filed a pro se notice of appeal on June 17, 2004.

## Post-conviction Hearing

The only two witnesses at the post-conviction hearing were trial counsel and the petitioner. Trial counsel stated that the petitioner had a history of mental health problems. Her office, the public defender's office, had represented the petitioner on previous occasions. For this trial, trial counsel had difficulty finding the victims because they had moved. She decided not to search for the victims so as not to "rock the boat." Trial counsel thought that the State might not be able to locate the victims, and she thought it would be better for the petitioner if his counsel was not the source of their location. She also spoke with a witness whose name the petitioner gave to her, and she spoke with the investigating officer. Trial counsel also filed for and received discovery. The State submitted a written offer for a plea that was to expire on December 14. The trial was set for December 17. However, trial counsel was unable to speak with the petitioner before the trial date. Therefore, she presented the offer to the petitioner immediately before trial. She stated that she told the petitioner that it was a fair offer. There had been a motion to suppress the petitioner's written statement that was scheduled immediately before the trial. The petitioner's plea was accepted by the trial court before the suppression hearing began. Therefore, there was no suppression hearing. At the plea colloquy, the petitioner voiced reluctance to accept the plea and stated that he wanted to go to trial. Trial counsel did not intervene at this time, because the petitioner was speaking with the trial court. The petitioner later stated multiple times that he wanted to accept the plea.

The petitioner also testified at the post-conviction hearing. The petitioner has been diagnosed as bipolar and schizophrenic. He was on medication at the time he made his plea. The medication slows down his thinking, and he has a harder time understanding things. However, he did understand what was going on at the post-conviction hearing during his testimony. He stated that he thought trial counsel was doing a good job. He did not have any concerns that she was not investigating enough. He did not want to plead guilty because he did not want to serve the eight years they were going to give him. He understood the sentence structure that effectively, he was only going to serve four additional years on top of a four-year sentence for his probation violation. He

---

[1] This type of plea is named after North Carolina v. Alford, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his best interest while professing his actual innocence.

decided to take the plea because he was scared of a potential thirty-seven year sentence had he gone to trial and been convicted of the original charges. He stated that he did write the statement confessing to the crime, but he wrote down what the district attorney told him to write. The petitioner stated that the district attorney offered to get him mental help instead of jail time if he wrote the statement. When asked if he was coerced to accept the plea, the petitioner stated that it was his judgment to take the plea. He stated that he brought this petition because he wants to get out of prison and that completing eight years is hard. He is still unsure about the wisdom of entering into the plea because he should go to trial and "get his innocence."

## ANALYSIS

The petitioner argues that his plea was involuntary, that he was afforded the ineffective assistance of counsel and that the post-conviction court's order did not meet the requirements of Tennessee Code Annotated section 40-30-111. The State argues that the plea was voluntary and the petitioner received effective assistance of counsel.

### Tennessee Code Annotated Section 40-30-111(b)

The petitioner argues that the post-conviction court's order and memorandum do not meet the requirements under Tennessee Code Annotated section 40-30-111(b). Tennessee Code Annotated section 40-30-111(b) states:

> Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each such ground.

It is true that the post-conviction court's order and memorandum are somewhat meager. However, the post-conviction court did make oral findings of fact and conclusions of law at the conclusion of the post-conviction hearing. We have stated on previous occasions that the inclusion of oral findings by a post-conviction court is sufficient to render such an error harmless. See State v. Higgins, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987), perm. app. denied, (Tenn. Mar. 30, 1987); State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984), perm. app. denied, (Tenn. Sept. 12, 1984).

### Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those

findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

The post-conviction court made the following findings at the conclusion of the post-conviction hearing:

> I'm going to dismiss the PCR for these reasons:
>
> During the time that the Public Defender's Office represented Mr. Butler, not only on these charges, but on some prior, unrelated charges of burglary, and I think maybe a probation revocation.
>
> Mr. Butler was evaluated twice; that is, he had two mental evaluations. Both of those found him capable of standing trial and assisting in his defense, and both found that a defense of insanity would not stand in his cases.
>
> Now, Mr. Butler has signed a confession, where he admits in his confession that he did these things to these two little girls. For want of a better term, Mr. Butler was given a brother-in-law deal by the State, when they reduced these charges to aggravated sexual battery, I think it was – yes; aggravated sexual battery – and allowing him to enter a plea of guilty to that reduced charge and take an eight-year sentence.
>
> And if I read it correctly, on each charge, those sentences to be concurrent, not only with each other, but also with another case number 11, . . . let me get that right for the record. Not only was he allowed to have these two eight-year sentence[s] be concurrent one with the other, but also concurrent with case number 11, 117, which I don't have that file in front of me, but I have to assume that was the burglary case where his probation had been revoked and he was then serving a sentence, and the eight-year sentences that he got in these cases, he's serving – Mr. Butler, you are serving those at the same time that you are serving another sentence that is unrelated to this.
>
> What you have, in effect, is a deal where you don't have to serve any time for these two pleas that you entered in these two cases. You are serving these two eight-year sentence[s] at the same time you are serving the sentences that have been imposed on you for violation of your probation, which I believe is burglary. . . .

. . . .

Well, theft or a theft-type charge. So what you've got here, you are not doing any time on these sex offenses. You are serving these eight-year sentences at the same time you are serving these sentences for your theft charges. Do you understand that?

. . . .

It's almost a situation where the Court is almost obligated to protect you against yourself, for fear that you might get a new trial on these charges and get convicted, and leave this courtroom with an horrendous sentence, whereas right now, in three-and-a-half years, you would have served all of these sentences.

Plus, I just don't find anything wrong with either. I've read the transcript on the plea that the Court took. I will have to admit this, that I'm prone to do. Maybe I shouldn't say so you would be taking an awful chance if you went to trial.

However, I don't know but what a Circuit Judge doesn't owe that duty to a defendant who has been offered a deal.

And then, where the Court is otherwise satisfied with everything, and then halfway through the plea, Mr. Butler decide he doesn't want to do this; he wants to go to trial, and in the face of two mental evaluations that found him competent and a confession.

We didn't have a suppression hearing on it, but I think we can all take judicial notice that suppression motions – you've got to have an almost perfect set of facts to win one of those. And when I say win one of those things, to get the Court to grant an [sic] suppression.

We have as Exhibit 3 in this case the <u>Miranda</u> rights that were given to Mr. Butler, before he gave this statement. I just don't find anything wrong with what happened to Mr. Butler. In fact, I think Mr. Butler was handed one of the better deals that I've seen, since I've been sitting up here.

So for these reasons – and I think [trial counsel] did everything that could possibly be done. As far as the business of the trial date coming and going, it's my understanding from her testimony that she was advised that, we'll make this offer to you. We're not going to bring the jury in. If we don't settle it today, then you'll be prepared to go to trial in the very near future, which would have been a delay of very little time, if any, if this plea agreement had not been accepted by Mr. Butler.

So, if you'll draw that order, I'm going to overrule your petition.

**Involuntary Guilty Plea**

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The petitioner argues that his plea was involuntary and unknowing because he was not presented with the plea offer until the morning of trial and because he was on anti-psychotic medication at the time he accepted the plea.

The sole evidence at the post-conviction hearing concerning the petitioner's medication and its effects was the petitioner's testimony. In Robert A. Hayden v. State, No. M2004-00856-CCA-R3-PC, 2004 WL 2853477 (Tenn. Crim. App., at Nashville, Dec. 10, 2004), perm. app. denied, (Tenn. Mar. 28, 2005), a petitioner argued that his guilty plea had been involuntary because of medication he was taking at the time of his plea. Robert A. Hayden, 2004 WL 2853477, at *6. In that case, the petitioner submitted an excerpt from the Physician's Desk Reference as evidence of the effects of the medication. Id. There was no expert proof as to why the petitioner was taking the medication, nor was there proof as to the side-effects of the medication. Id. We held that this proof alone was not sufficient to establish that the medication would render the petitioner's guilty plea involuntary. Id. The same can be said for this case. The only evidence presented concerning the type of medication and its side-effects was from the petitioner's testimony. This is not sufficient evidence for us to conclude that his guilty plea was involuntary because of his medication.

The fact that the plea was presented to him the morning of the trial does not support an argument that his plea was not voluntary and knowing. Although the petitioner did vacillate between going to trial and accepting the plea, the final decision was to accept the plea. The petitioner testified that the judgment to accept the plea was his own. He also testified that he was not coerced into taking the plea. He specifically stated that the reason he accepted the plea was to avoid a potential thirty-seven-year sentence. He also stated that the reason he wanted post-conviction relief is because he did not even want to serve the eight years he received as part of the plea bargain. The evidence

at the post-conviction hearing supports the post-conviction court's determination that the petitioner's plea was voluntary and knowing.

Therefore, this issue is without merit.

### Effective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . .; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn.1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing Alford, 400 U.S. at 31). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. 668, 694 (1984), the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the State standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn.1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn.1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. Boykin, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

On appeal, the petitioner argues that his trial counsel failed to investigate and consult with him. Trial counsel testified that she located the witness he indicated was present at the scene and discovered that the victims had moved and were not readily available. She also testified that she visited him twice while he was incarcerated and she conferred with him concerning the guilty plea offer before trial. The petitioner himself testified at the post-conviction hearing that he had no problems with the investigation completed by his trial counsel. He stated that the reason he accepted the plea was because of his fear of a potential thirty-seven-year sentence. The post-conviction court's determination that there was no deficient performance on the part of trial counsel is supported by the record. In addition, even if trial counsel's performance was deficient, it does not appear that the petitioner would have not pled guilty and gone to trial.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE